UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-80015-CIV-MARRA/JOHNSON

BRECKENRIDGE PHARMACEUTICAL, INC.,
a Florida corporation,

      Plaintiff,

v.

EVERETT LABORATORIES, INC.,
a New Jersey corporation,

      Defendant.

_____/

## REPLY OF DEFENDANT EVERETT LABORATORIES IN SUPPORT OF MOTION TO DISMISS, STAY OR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)[1]

The opposition brief of plaintiff Breckenridge Pharmaceutical, Inc. ("Breckenridge") fails to overcome the unmistakable absence of a "substantial controversy" between the parties regarding the products or patents at issue in this case when Breckenridge filed its complaint for declaratory judgment. To the contrary, Breckenridge does not dispute that when the complaint was filed on January 7, 2009, defendant Everett Laboratories, Inc. ("Everett") neither knew of Breckenridge's Nutravance™ product nor had ever pursued or threatened a claim for infringement of the two patents at issue in this case (the '904 and '293 Patents). Under such circumstances it is clear that the "substantial controversy" which was a prerequisite to subject matter jurisdiction for this declaratory judgment action did not exist.

---

[1]Everett is concurrently filing a request for hearing and expedited consideration of its motion to dismiss, stay or transfer this case (the "Motion") because of the urgent need for Everett to have the appropriate court preliminarily enjoin Breckenridge's sales of Nutravance™ before Everett suffers yet additional irreparable harm from Breckenridge's infringement of Everett's patents.

CASE NO. 09-80015-CIV-MARRA/JOHNSON

Breckenridge also fails to rebut the fact that the Federal Rules of Civil Procedure require a party asserting patent invalidity do more than allege generally that the patents fail to comply with multiple sections of Title 35 of the U.S. Code. Breckenridge also makes no showing of why the dispute over the '904 and '293 Patents should be litigated in Florida rather than New Jersey. A company such as Breckenridge – with offices in New Jersey and Connecticut, annual revenues of $170 million, and patent litigation throughout the United States – has no legitimate objection to litigating patent issues in New Jersey. Moreover, Breckenridge's shallow and misguided negotiating ploy of filing the instant suit the day before the Federal Circuit mediation relating to Breckenridge's appeal of a preliminary injunction against it in the Vitafol®-OB/Multifol Plus litigation should not be rewarded by allowing this dispute to remain here.

## ARGUMENT

I.   **SUBJECT MATTER JURISDICTION DOES NOT EXIST FOR BRECKENRIDGE'S PREMATURE FILING.**

A.   **When Breckenridge Filed its Complaint there Was No "Substantial Controversy" Between the Parties.**

It is not disputed that at the time Breckenridge filed its complaint: Everett (1) had no knowledge of Breckenridge's Nutravance™ product; (2) had taken no affirmative act toward Breckenridge with respect to the Nutravance™ product; and (3) had never enforced its Strovite® Advance patents against anyone (including Breckenridge). Accordingly, Breckenridge simply cannot demonstrate the existence of "a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" when this suit was filed. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). Indeed, Breckenridge's sole basis for asserting the existence of a "substantial controversy" on January 7, 2009 (when this case was filed) is its argument that Everett had exhibited a "prior pattern of conduct in vigorously enforcing its intellectual property

2

CASE NO. 09-80015-CIV-MARRA/JOHNSON

rights through the filing of lawsuits against competitive lower-cost prescription generic nutritional supplements." Opp. Br. at 6-7.[2]

This argument has no merit. The fact that over its thirty year existence Everett has asserted its patent rights three times (each case involved Everett's Vitafol®-OB product) and its trademark and other rights on two other occasions does not establish a pattern sufficient to create the requisite "substantial controversy." Even under the more liberalized test of *MedImmune, supra*, a "substantial controversy" cannot be predicated on "a purely subjective or speculative fear of future harm." *Prasco LLC v. Medicis Pharma. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008). None of the case law relied upon by Breckenridge supports its argument that Everett's prior litigation by itself created "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127 (citation omitted).

Seeking to avoid the obvious fact that the prior patent litigation involving Everett had no connection whatsoever to the patents and products at issue in this case, Breckenridge asserts that Everett's patented product in the prior case (Vitafol®-OB) is the "same technology" as the product covered by the different patents in this case (Strovite® Advance). Opp. Br. 8, n. 6. This is an absurd argument unsupported by the cases cited by Breckenridge. *See* Opp. Br. at 13. In *Cimline, Inc. v. Crafco*, No. 07-3997, 2007 WL 4591957, *4 (D. Minn. Dec. 28, 2007), both the declaratory action and the prior case involved the same patent and the same product line; namely a "melter with autoloader." In fact, the jurisdictional allegation in that case was that the defendant had "previously alleged patent infringement for every prior Cimline attempt to market and sell a melter with autoloader." *Id.* In *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,

---

[2]Breckenridge's complaint also alleged that Everett's marking of Strovite® Advance provided a basis for jurisdiction in this case, but its brief inherently concedes that marking of a product is not relevant to establishing jurisdiction under the Declaratory Judgment Act.

3

482 F.3d 1330, 1340 (Fed. Cir. 2007), the prior litigation involved Novartis asserting one of its five Orange Book listed patents for its Famvir® drug against Teva and the declaratory judgment action involved Teva seeking a declaration it did not infringe Novartis's other four Orange Book listed patents for the "Famvir®" drug.[3]   Quite clearly, same technology in those cases meant the identical drug or the same product line.

Under the proper meaning derived from the case law, Strovite® Advance is not the "same technology" as Vitafol®-OB.  Vitafol®-OB is a nutritional supplement for pregnant and lactating women.  By contrast, Strovite® Advance is generally prescribed for patients in physiologically stressful conditions and is a materially different composition of nutrients than Vitafol®-OB. Specifically, Strovite® Advance contains the following nutrients not found in Vitafol®-OB: biotin, pantothenic acid, manganese, selenium, copper, alpha lipoic acid and lutein.[4]  In addition, Vitafol®-OB contains iron, which is not found in Strovite® Advance.[5]  Vitafol®-OB and Strovite® Advance products are no more the "same technology" than any pharmaceutical company's two drugs for treating different diseases.  In short, each of these products is used for completely different conditions, contain completely different active ingredients, and is covered by completely different patents.  There are literally thousands of nutritional supplement products on

---

[3]Breckenridge's pre-*MedImmune* cases are also inapplicable to the present facts.  *See* Opp'n Br. at 9-10.  In *Goodyear v. Releasomers, Inc.*, the related litigation involved trade secrets protecting the exact same technology that was covered by the patents-in-suit and at the time the related litigation was initiated, the patents-in-suit had not yet issued.  824 F.2d 953, 954-955 (Fed. Cir. 1987).  In *Kos Pharma., Inc. v. Barr Labs., Inc.*, the related litigations involved patents that were "nearly identical" or "cover[ed] essentially the same scientific process" as the asserted patents. 242 F. Supp. 2d 311, 316 (S.D.N.Y. 2003).  In *Third Wave Tech., Inc. v. Digene Corp.*, the court noted that the "fifth indication of defendant's intent to sue is defendant's ongoing litigation with another company that is alleged to have infringed one of the patents at issue in this case."  No. 05-C-0594-C, 2006 WL 83340, at *3 (W.D. Wis. Jan. 10, 2006) (emphasis added).
[4]*See* Product Inserts for Strovite® Advance, Exhibit 4(B) to Motion, and Vitafol®-OB, Exhibit A to Opp. Br.
[5]*Id.*

CASE NO. 09-80015-CIV-MARRA/JOHNSON

the market.  Only desperation could prompt Breckenridge to maintain that such supplements represent the "same technology."[6]

Breckenridge's attempt to distinguish the Federal Circuit's decision in *Prasco, supra* (Opp. Br. at 11-12), is unavailing.  Similar to this case, the plaintiff in *Prasco* asserted that the defendant's "past history of enforcing patent rights to protect its 'core products' supports a finding of a case or controversy."  537 F.3d at 1341.  "In particular, [the plaintiff] allege[d] that [defendant's] infringement suit against [plaintiff] and another generic company in October 2005 demonstrate[d] a genuine risk that the defendant will also attempt to enforce its patents against Prasco."  *Id.*  The court properly rejected that argument, as this Court should do here.  The Federal Circuit acknowledged that "[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy," but added that ***"one prior suit concerning different products covered by unrelated patents is not the type of pattern of prior conduct that makes reasonable an assumption that [defendant] will also take action against [plaintiff] regarding its new product."*** *Id.* (emphasis added).  Similarly here, the fact that Everett sued Breckenridge on one prior occasion "concerning different products" (Vitafol®-OB and Multifol Plus) "covered by unrelated patents" is "not the type of pattern of prior conduct that makes reasonable an assumption" by Breckenridge that Everett would also take action against Breckenridge regarding the new product (Nutravance™).

---

[6]Breckenridge's other "related litigation" cases are also inapposite here.  *See* Opp'n Br. at 8-9. In *In re Dr. Reddy's Labs, Ltd.*, the patent holder had publicly stated that any generic maker of the drug at issue would need to license the patents-in-suit or be faced with the threat of litigation. No. 01-cv-10102, 2002 WL 31059289, at *2 (S.D.N.Y. Sept. 13, 2002).  In *Astec Am., Inc. v. Power-One, Inc.*, the defendant and a company related to the plaintiff were involved in patent litigation regarding electrical power supplies.  No. 6:07-cv-464, 2008 WL 1734833, at *1 (E.D. Tex. Apr. 11, 2008).  The district court determined that a case of actual controversy existed because of the defendants statements regarding the products at issue in the prior litigation and the defendants attempts to get discovery on those products in the related litigation.  *Id.* at *5-6, 8.

CASE NO. 09-80015-CIV-MARRA/JOHNSON

Finally, it is worth emphasizing that Breckenridge did not file its Complaint in this case as a response to "a real and immediate injury or threat of future injury" caused by Everett. *See Prasco*, 537 F.3d at 1339. Rather, Breckenridge started selling Nutravance™ and filed the instant action as a negotiating ploy the day before the Federal Circuit mediation involving the Vitafol®-OB patents. Indeed, Breckenridge concedes that it "made a 'nominal launch'" of Nutravance™ "before the mediation . . . to encourage the possibility of resolving any dispute concerning Nutravance™ as part of an overall settlement between the parties." Opp. Br. at 3 n. 5. Such a unilateral pressure tactic by Breckenridge to induce Everett into settling a separate litigation over entirely different patents and products is inadequate to create the requisite "substantial controversy" for subject matter jurisdiction to exist.

**B.    Post-filing Events are Irrelevant as to Whether Jurisdiction Existed When Breckenridge Filed its Complaint.**

Breckenridge acknowledges the requirement that "subject matter jurisdiction . . . have existed *at the commencement of this lawsuit*" (Opp. Br. at 10) (emphasis added), but insists that Everett's subsequent filing of the New Jersey case against Breckenridge's sale of Nutravance™ demonstrates the existence of a "substantial controversy" regarding the products and patents at issue in this case when this suit was filed. *Id.* Significantly, in each of the cases cited by Breckenridge for this position, there were other circumstances, inapposite to the present facts, that supported the finding of a "substantial controversy" when the declaratory judgment complaint was filed.[7] Thus, the fact that Everett ultimately sued Breckenridge *after* Everett learned of the existence and characteristics of Nutravance™ is not dispositive here.

_____
[7] *See Micron Tech, Inc. v. Mosaid Tech, Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (plaintiff had already witnessed the patent-holder suing "each of the other leading manufacturers" of dynamic random access memory chips); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 892-93 (D. Md. 2008) (plaintiff's use of stem cells as "potential therapeutics" or as "drug screening tools" was the exact activity at the center of a prior litigation filed by defendant against it, and

6

CASE NO. 09-80015-CIV-MARRA/JOHNSON

## II.   BRECKENRIDGE'S BALD ASSERTIONS OF PATENT INVALIDITY DO NOT STATE A CLAIM FOR RELIEF.

As set forth in the Motion (pp. 11-12), Breckenridge's generalized allegation that the Strovite® Advance patents violate multiple sections of Title 35 of the U.S. Code is inadequate under Rule 8(a), Fed. R. Civ. P.  The fact that Breckenridge has no predicate for making such assertions is evident from its request earlier this week that the U.S. District Court judge in New Jersey handling the patent infringement case filed by Everett regarding the same patents afford Breckenridge "three months to conduct fact and expert discovery of Everett" before holding a hearing on Everett's motion for preliminary injunction in that case.[8]  If Breckenridge had any legitimate basis for asserting the invalidity of the '904 and '293 Patents at issue in this case (and the New Jersey litigation), it would not need to request such a delay.

Before this Court, Breckenridge makes no effort to rebut Everett's reliance on *United Fixtures Co. v. Base Mfg.*, No. 08-cv-506-Orl-28GJK, 2008 WL 4550212, *1 (M.D. Fla., Oct. 8, 2008).  There, the defendant's invalidity defense asserted that a patent was invalid "for failure to comply with the statutory requirements of Parts II and III of Title 35, United States Code, including but not limited to Sections 101, 102, 103, 112 and/or 256." *Id.* at *2.  In striking this defenses as improper the court stated it "exemplifi[ed] the meaning of 'conclusory allegations'" and was "totally devoid of any allegations that would put Plaintiff on notice of the factual basis

---

the patent-holder had expressed its "confidence that 'any' third party wishing to use neural stem cells as 'potential therapeutics' or as 'drug screening' tools 'will have to seek a license from" defendant"); *Cingular Wireless LLC v. Freedom Wireless, Inc.*, No. 06-1935, 2007 WL 1876377, *3 (D. Ariz. June 27, 2007), ("Defendant had previously initiated legal action against Plaintiff Cingular regarding the use of the patents-in-suit").  In *BP Chemicals. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993), the court actually held that there was no actual controversy between the parties upon which declaratory relief could be granted.  In so doing, the court upheld the district court's conclusion that the "declaratory action was brought as a marketing strategy, and not in response to a threat by" the patent-holder. *Id.* at 980.

[8]*See* Letters dated February 24 and 25, 2009, Exhibits A and B.

CASE NO. 09-80015-CIV-MARRA/JOHNSON

for legal defenses asserted." *Id.* *5.[9]  This ruling is entirely consistent with other courts which have confronted similarly flimsy assertions of patent invalidity.[10]

**III.    IF THIS CASE IS NOT DISMISSED IT SHOULD BE STAYED OR TRANSFERRED TO NEW JERSEY AND CONSOLIDATED WITH THE PATENT INFRINGEMENT CASE PENDING THERE.**

In its effort to prevent this case from being transferred to New Jersey and consolidated with the pending litigation there, Breckenridge disingenuously tries to portray itself as the "David" to Everett's "Goliath." For example, Breckenridge maintains that "Everett has 'about forty full-time employees,' while Breckenridge has about 35 employees." Opp. Br. at 1. To begin with, it is not surprising that Breckenridge would have fewer employees than Everett, given that, unlike Everett, Breckenridge does not focus on development of new products and sales and marketing efforts for those products. Instead, Breckenridge's business model is to exploit the patented inventions of other companies, such as Everett. In addition, Breckenridge

---

[9]Breckenridge dismisses *United Fixtures* as being from "another federal district." Opp. Br. 16. But this contention ignores the fact that the Federal Rules of Civil Procedure apply to all federal district courts, including other districts within Florida, and that the District Court which decided United Fixtures is also in the Eleventh Circuit.

[10]*See, e.g., Qarbon.com Inc. v. Ehelp Corp.*, 315 F. Supp. 2d 1046, 1050-51 (N.D. Cal. 2004) ("eHelp alleges that 'the '441 patent is invalid and void under the provisions of Title 35, United States Code §§ 100 et seq., and specifically §§ 101, 102, 103, and/or 112' . . . . Such a pleading is 'radically insufficient.'"); *Duramed Pharma., Inc. v. Watson Labs., Inc.*, No. 08-00116-LRH-RAM, 2008 WL 5232908, *4 (D. Nev. Dec. 12, 2008) ("By failing to specify which of the many possible grounds of patent invalidity it is relying upon, Watson does not put Duramed on fair notice as to the basis of its counterclaim."); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C-95-3577 DLJ, 1996 WL 467293, *13 (N.D. Cal. July 24, 1996) ("Since the [statutory sections cited in the affirmative defense] provide numerous grounds for finding a patent invalid, the defendant must provide a more specific statement of the basis for this defense in order to give ACS fair notice of the claims being asserted"). The one case cited by Breckenridge to justify its use of a generalized allegation of patent invalidity – *Boldstar Technical, LLC v. Home Depot*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007) – is contrary to all of the above cases. And, unlike the present case, involved potentially compulsive counterclaims and affirmative defenses, rather than claims for declaratory relief.

8

CASE NO. 09-80015-CIV-MARRA/JOHNSON

ignores the fact that it has employees in three different offices – including New Jersey (the site of the competing patent infringement case) and the nearby Connecticut. Motion, at 18.

In any event, Breckenridge's effort to cast itself as a tiny company camouflages the fact that Breckenridge has more than 100 products on the market and expected annual sales of $170 million in 2008.[11]  In short, Breckenridge has far greater means than Everett and this factor therefore favors transfer. Breckenridge is accustomed to being sued by patent-holders, and filing bogus Declaratory Judgment lawsuits against patent-holders, throughout the United States.[12]

In opposing a transfer of this case to New Jersey and insisting that it has the right to litigate the dispute in Florida because it "filed first," Breckenridge also ignores its inequitable conduct in using the filing of the instant case on the eve of the mediation between the parties in the Vitafol®-OB litigation. As set forth in the Motion (p. 16), in *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 1101 (1997), the court held that it was not an abuse of discretion for a district court to decline to exercise its discretion to hear a suit when the declaratory judgment plaintiff filed the case "as a tactical measure . . . in order to improve [the plaintiff's] posture in the ongoing negotiations – not a purpose the Declaratory Judgment Act was designed to serve." *Id.* at 815. That is precisely the case here: Breckenridge filed this case

---

[11] *See* Motion and Exhibit 8 thereto (pp. 31-32).

[12] These cases include *Breckenridge Pharma., Inc, v. Cornerstone Biopharma, Inc.*, No. 08-02999 (D. Md. 2008); *KV Pharma. Co. v. Breckenridge Pharma., Inc*, No. 08-01052 (E.D. Mo. 2008); *Warner Chilcott Labs. Ireland Ltd., et al. v. Breckenridge Pharma., Inc.*, No. 08-03444 (D.N.J. 2008); *Breckenridge Pharma., Inc. v. Interpharm Holding, Inc.*, No. 08-03479 (S.D.N.Y. 2008); *Breckenridge Pharma., Inc. v. Cornerstone Biopharma, Inc.*, No. 07-01004 (D. Md. 2007); *Novartis Pharma. Corp. v. Breckenridge Pharma., Inc.*, No. 06-04199 (D.N.J. 2006); *Bradley Pharma., Inc. v. Breckenridge Pharma., Inc.*, Case No. 06-02442 (D.N.J. 2006); *Breckenridge Pharma., Inc. v. Metabolite*, No. 05-01083 (D. Colo. 2005); *First Horizon Pharma. Corp. v. Breckenridge Pharma., Inc.*, No. 04-3924 (S.D. Tex. 2004); and *First Horizon Pharma. Corp. v. Breckenridge Pharma., Inc.*, No. 04-02728 (N.D. Ill. 2004).

CASE NO. 09-80015-CIV-MARRA/JOHNSON

the day prior to the commencement of the Federal Court mediation in the Vitafol®-OB litigation as a hard-core negotiation tactic to try to pressure Everett into settling the Vitafol®-OB litigation on terms favorable to Breckenridge.

Finally, retention of this case in this District would improperly reward Breckenridge for its unabashed forum-shopping. In the prior case involving Vitafol®-OB, Breckenridge voluntarily dismissed its declaratory judgment action in Florida and submitted to the jurisdiction of the New Jersey District Court. However, Breckenridge was obviously unhappy with that Court's granting of Everett's motion for preliminary injunction in that case,[13] and Breckenridge filed prematurely filed this suit to avoid having to appear before that same Court in a another preliminary injunction hearing. Such "shopping" for a presumably more sympathetic judge is not a proper purpose of the Declaratory Judgment Act. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (district courts should "discourage litigants from filing declaratory actions as a means of forum shopping"); *The Sherwin-Williams Co. v. Holmes Co.*, 343 F.3d 383, 388 (5th Cir. 2003) (in deciding whether to decide or dismiss a declaratory action court should consider, *inter alia*, "whether the plaintiff engaged in forum shopping in bringing the suit").

## CONCLUSION

For the reasons set forth above and in Everett's Opening Brief, Everett, requests that the Court grant its motion and dismiss the Complaint and this action. Alternatively, Everett respectfully requests that this action be stayed pending the outcome of the New Jersey Action, or transferred to the District of New Jersey for consolidation with the New Jersey Action.

---

[13] *See Everett Laboratories, Inc. v. Breckenridge Pharmaceutical, Inc.*, 573 F. Supp. 2d 855 (D.N.J. 2008).

10

CASE NO. 09-80015-CIV-MARRA/JOHNSON

Date:  February 27, 2009

/s/*Roy Goldberg*
Roy Goldberg.
rgoldberg@sheppardmullin.com
Mark A. Geier
mgeier@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, DC 20005
Telephone No.  (202) 218-0007
Facsimile No.  (202) 218-0020
*Co-Counsel for Defendant Everett Laboratories*

Respectfully submitted,

   /s/ *Janet T. Munn*
Janet T. Munn
jmunn@feldmangale.com
FELDMAN GALE, P.A.
One Biscayne Tower, 30th FL
2 South Biscayne Blvd.
Miami, FL  33131
Telephone No. (305).397.0798
Facsimile No. (305) 358.3309
*Counsel for Defendant Everett Laboratories*

11

CASE NO. 09-80015-CIV-MARRA/JOHNSON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of February, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Robert E. Pershes
L.A. Perkins
Jennifer E. Simpson
**BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP**
Counsel for Plaintiff
5355 Town Center Road, Suite 900
Boca Raton, FL 33486-1069
Telephone No.  (561) 241-0414
Facsimile No.  (561) 241-9766
*Via CM/ECF*

By:  /s/ *Janet T. Munn*

# EXHIBIT "A"

LD
GR

LITE DEPALMA
GREENBERG & RIVAS, LLC
ATTORNEYS AT LAW

TWO GATEWAY CENTER, 12TH FLOOR
NEWARK, NJ 07102

TEL: 973.623.3000
FAX: 973.623.0858
WWW.LDGRLAW.COM

February 24, 2009

**VIA ECF & BY HAND**

Honorable Jose L. Linares, U.S.D.J.
United States District Court
Martin Luther King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street – Room 2042
Newark NJ 07102

>      Re:    **Everett Laboratories, Inc. v. Breckenridge Pharmaceutical, Inc.,**
>             **Civil Action No. 09-0177 (JLL)(CCC)**

Dear Judge Linares:

        This firm, together with Crowell & Moring, LLP, represents defendant Breckenridge
Pharmaceutical, Inc. ("Breckenridge"), in the above-referenced matter.  We write to seek the
Court's guidance regarding the Motion for a Preliminary Injunction filed by plaintiff on Friday
evening, February 20, 2009 (over five weeks after it commenced this action).  That motion is
returnable on March 16, 2009, making Breckenridge's opposition due next Monday, March 2.

        As background, on January 7, 2009, Breckenridge filed a declaratory judgment action
against Everett Laboratories, Inc. ("Everett") in the United States District Court for the Southern
District of Florida concerning a dispute over different products than in the prior lawsuit between
the parties pending in this Court.  Six days later, on January 13, 2009, Everett filed the instant
mirror-image lawsuit in this Court concerning the same two patents and the same products
already at issue in the first-filed Florida lawsuit.

        On January 25, 2009, Breckenridge filed its motion to stay the instant lawsuit while the
Florida court properly decides which of the two co-pending lawsuits should proceed.  Thereafter,
Everett filed a Motion to Dismiss, Stay or Transfer in the Florida court, which will be fully
briefed this week and will then be pending a ruling from that court.  Breckenridge's Motion to
Stay in this Court is returnable on March 2, 2009, the same day that its opposition to Everett's
Preliminary Injunction Motion is now due.

        Breckenridge is in the untenable position of not knowing whether it should expend time
and resources in preparing for a preliminary injunction hearing now, without having the benefit
of this Court's ruling on its Motion to Stay and the Florida court's decision regarding the priority
of the first-filed action.  Moreover, consideration of Everett's preliminary injunction motion at
this time would turn out to be wasteful of this Court's resources and duplicative, in the event that
the Florida court rules that it has jurisdiction over that first-filed lawsuit.  Accordingly, we
respectfully request that the Court hold Everett's newly filed preliminary injunction motion in

201188 v1



Hon. Jose L. Linares, U.S.M.J.
February 24, 2009
Page -2-

abeyance until such time as this Court decides Breckenridge's Motion to Stay this matter, and the Florida court rules on Everett's Motion to Dismiss, Stay or Transfer.

If, however, the Court decides to proceed now with Everett's Motion for a Preliminary Injunction and to schedule a hearing, Breckenridge requests that (1) prior to submitting its opposition, it be given three months to conduct fact and expert discovery of Everett, focused on the arguments it has made in support of its motion; and (2) the Court schedule a two-day evidentiary hearing, as Breckenridge anticipates putting on several fact and expert witnesses to support its opposition to this motion.

Should the Court wish to confer with counsel on this matter, we will make ourselves available at the Court's convenience.

Respectfully,

*Mayra V. Tarantino*

Mayra V. Tarantino

MVT:cd
cc:  Robert Schoenberg, Esq. (via ECF)

# EXHIBIT "B"



**RIKER
DANZIG
SCHERER
HYLAND
PERRETTI**LLP

A T T O R N E Y S   A T   L A W

Robert J. Schoenberg
**Partner**

<u>Direct:</u>
tel: 973.451.8511
fax: 973.451.8604
rschoenberg@riker.com
Reply to: Morristown

February 25, 2009

**<u>Document electronically filed & Hand Delivery</u>**

The Honorable Jose L. Linares, U.S.D.J.
United States District Court
Martin Luther King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street – Room 5054
Newark, NJ 07102

      Re:    Everett Laboratories, Inc. v. Breckenridge Pharmaceutical, Inc.
             Civil Action No. 09-0177 (JLL) (CCC)

Dear Judge Linares:

      Plaintiff Everett Laboratories, Inc. ("Everett") respectfully submits this letter in opposition to the request by defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") to defer adjudication of Everett's preliminary injunction for at least 90 days. For the reasons set forth below, and as further elaborated in the motion for preliminary injunction filed last week, Everett opposes Breckenridge's transparent effort to wangle for itself several additional months of time in which to market and sell "Nutravance" – an unabashedly infringing, knock-off version of Everett's patented Strovite® Advance prescription-only nutritional supplement.

      In order to fully and fairly consider Breckenridge's request for a delay of at least 90 days before the holding of a hearing on Everett's motion for preliminary injunction, the Court should keep in mind that Breckenridge's business model is to copy patented inventions, exploiting the uniqueness of the prescription-only nutritional supplement marketplace, and reap ill-gotten financial rewards, before being shut down by the patent-holder, typically through a settlement agreement. As a result, Breckenridge is in constant litigation, either as a defendant to claims of patent infringement (and other intellectual property causes of action) or as a filer of complaints for declaratory judgment. Such cases include *Everett Laboratories, Inc. v. Breckenridge Pharmaceutical, Inc.,* Civil Action No. 08-3156 (D.N.J. 2008) (JLL) ("the Vitafol®-OB Case") (on appeal to Federal Circuit, oral argument scheduled for April 3, 2009); *Breckenridge Pharmaceutical, Inc, v. Cornerstone Biopharma, Inc.,* Case No. 08-2999 (D. Md. 2008); *Breckenridge Pharmaceutical, Inc. v. KV Pharmaceutical Co.,* Case No. 08-80963 (S.D. Fla.

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
3929767.1                      www.riker.com

The Honorable Jose L. Linares, U.S.D.J.
February 25, 2009
Page 2

2008); *KV Pharmaceutical Co. v. Breckenridge Pharmaceutical, Inc,* Case No. 08-01052
(E.D. Mo. 2008); *Warner Chilcott Laboratories Ireland Limited, et al. v. Breckenridge
Pharmaceutical, Inc.,* Case No. 08-03444 (D.N.J. 2008); *Breckenridge Pharmaceutical, Inc.
v. Interpharm Holding, Inc.,* Case No. 08-03479 (S.D.N.Y. 2008); *Breckenridge
Pharmaceutical, Inc. v. Cornerstone Biopharma, Inc.,* Case No. 07-01004 (D. Md. 2007);
*Novartis Pharmaceuticals Corp. v. Breckenridge Pharmaceutical, Inc.,* Case No. 06-04199
(D.N.J. 2006); *Bradley Pharmaceuticals, Inc. v. Breckenridge Pharmaceutical, Inc.,* Case No.
06-02442 (D.N.J. 2006); *Breckenridge Pharmaceutical, Inc. v. Metabolite,* Case No. 05-
01083 (D. Colo. 2005); *First Horizon Pharmaceutical Corp. v. Breckenridge Pharmaceutical,
Inc.,* Case No. 04-3924 (S.D. Tex. 2004); *First Horizon Pharmaceutical Corp. v.
Breckenridge Pharmaceutical, Inc.,* Case No. 04-02728 (N.D. Ill. 2004); *Breckenridge
Pharmaceutical, Inc. v. First Horizon Pharmaceutical, Inc.,* Case No. 04-60514 (S.D. Fla.
2004); and *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.,* Case No. 04-
80090 (S.D. Fla. 2004).

    Breckenridge recently targeted Everett's Vitafol®-OB prescription-only
nutritional supplement for this "treatment." Fortunately, this Court granted Everett's
motion for preliminary injunction against Breckenridge's sales of its copycat Multifol
Plus product. *Everett Laboratories, Inc., supra* (Opinion and Order filed August 28,
2008). However, because the injunction did not mandate a recall of the Multifol Plus
inventory already in place at wholesale providers and retail stores, Breckenridge was
still able to enjoy several additional months of illicit and undeserved revenues because
of its improper counterfeiting of Everett's product.

    Given Breckenridge's business model, it is no surprise that it finds itself once
again facing a possible preliminary injunction against its infringement of Everett's
patents in the present case. However, Breckenridge is doing everything it can possibly
conjure up to avoid answering in New Jersey for its actions. It is understandable, we
suppose, that Breckenridge wants to avoid at all costs having this Court rule once
again on a motion for preliminary injunction against it, under facts remarkably similar
to those supporting the prior Preliminary Injunction. It is no doubt for that reason
Breckenridge prematurely filed its complaint for declaratory judgment in Florida
seeking a declaration of invalidity for the patents applicable to Everett's Strovite®
Advance product *before* Everett even knew of the existence of Breckenridge's
competing product (Nutravance).

    Notably, Breckenridge's allegations in the Florida case are entirely (and
improperly) conclusory in nature. Breckenridge asserts that the two patents covering
Strovite® Advance are "invalid for failure to comply with the statutory requirements of
patentability under Title 35 of the United States Code, including but not limited to 35
U.S.C. §§ 101, 102, 103, and 112, and/or the requirements of Title 37 of the Code of

3929885.1

The Honorable Jose L. Linares, U.S.D.J.
February 25, 2009
Page 3


Federal Regulations."  Florida Complaint ¶¶ 28 and 31 (Exhibit F to Breckenridge's Motion for Stay of Proceedings, January 25, 2009).   No specifics are provided. Breckenridge is nevertheless asking this Court to hold off ruling on Everett's preliminary injunction motion against Nutravance until after the Florida court has ruled on Everett's motion to dismiss, stay or transfer the Florida case,[1] plus an additional three month delay, purportedly for Breckenridge "to conduct fact and expert discovery of Everett." (Letter, at 2).

Of course, Breckenridge provides no details or other explanation for why 90 days of discovery is necessary to respond to Everett's motion for preliminary injunction.[2] And, indeed, there is no plausible explanation other than Breckenridge's transparent desire for delay, delay, and more delay.  By contrast, Everett suffers irreparable harm each day that Nutravance remains on the market.  Breckenridge has been marketing and selling Nutravance ever since it launched the product (and filed its declaratory judgment action in Florida) on January 7, 2009, i.e., the day before the Federal Circuit-sponsored mediation (January 8, 2009) in the Vitafol®-OB Case.

Everett respectfully asks that the Court deny the relief sought by Breckenridge in its letter to the Court, and proceed to schedule a hearing on Everett's motion for preliminary injunction.

Respectfully,

Robert J. Schoenberg
Counsel for Everett Laboratories, Inc.


cc:   Michael E. Patunas, Esq.
      Roy Goldberg, Esq.
      Mayra V. Tarantino, Esq.


---

[1]Everett's reply brief in further support of its motion to dismiss, stay or transfer the Florida case will be filed February 25, 2009.

[2]Prior to making this request to the Court, Breckenridge never bothered to ask Everett whether it would agree to any period of discovery in connection with the preliminary injunction motion.  Their February 24 letter to the Court was the first time that Everett learned of such a request.