UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO 09-80015-CIV-MARRA/JOHNSON

BRECKENRIDGE PHARMACEUTICAL, INC.,
A Florida corporation,

      Plaintiffs,

v.

EVERETT LABORATORIES, INC.,
a New Jersey Corporation,

      Defendant.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendant Everett Laboratories' ("Everett")

Motion to Dismiss, Stay, or Transfer (DE 4/7), filed January 28, 2009, and Defendant's Motion

for Oral Argument on Motion to Dismiss, Stay, or Transfer and for Expedited Treatment of the

Motion (DE 15), filed February 27, 2009.  Both motions are fully briefed and ripe for review.

The Court has carefully considered the motions, responses, and replies, and is otherwise fully

advised in the premises.

## Background

Defendant Everett markets and sells prescription products to retailers, wholesalers,

distributors, and other purchasers of such products nationwide (DE 1, Compl. ¶ 4).  Everett

markets a prescription multi-vitamin and mineral product (collectively, "multivitamin") under

the name Strovite© Advance.  (Compl. ¶ 10).  This product has two patents associated with it:

U.S. Patent Nos.6,660,293 ('293) and 6,863,904 ('904). (Compl. ¶ 14, 18). Everett is the

assignee for the '293 and '904 patents. (Compl. ¶ 15, 19).  Additionally, Everett owns one or more United States copyright registrations for the product insert used for its Strovite© Advance product, including Registration No. TX 0006214099, which is identified in the online database of the United States Copyright Office as "Strovite advance product insert" and which is listed as being owned by Everett Laboratories, Inc. (Compl. ¶ 22).

On January 7, 2009, Plaintiff Breckenridge Pharmaceutical, Inc. ("Breckenridge") filed a Complaint (DE 1) for declaratory judgment, seeking declarations that the patents-in-suit are invalid; that its product, Nutravance multivitamin product, does not infringe any valid claim of the patents-in-suit; that the copyright for the Strovite© Advance product insert is invalid; that any copying and use by Breckenridge of the information contained on the product insert for Everett's Strovite© Advance product insert constitutes a fair use; and that Everett and its privies are enjoined from asserting either the '293 and '904 patents or any copyright on the product insert for Everett's Strovite© Advance against Breckenridge and/or its privies on the basis of Breckenridge's Nutravance product.  (Compl. pp. 9-10).

The Complaint does not allege that prior to Breckenridge's filing of the declaratory action, it had marketed Nutravance.  Rather, the Complaint alleges that Breckenridge began to market Nutravance on January 7, 2009, the day the Complaint was filed. (Compl. ¶ 11).  Additionally, the Complaint does not allege that Everett even had knowledge of Breckenridge's Nutravance product.

On January 28, 2009, Everett filed its Motion to Dismiss, Stay, or Transfer (DE 4).  Everett argues that, first and foremost, the Complaint must be dismissed because, at the time of filing the Complaint, there was no case or controversy to establish subject matter jurisdiction

under the Declaratory Judgment Act.  Everett also asserts that the allegations of patent invalidity in the Complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a) as conclusory and utterly devoid of any supporting facts.  Alternatively, Everett asks that, if the Court holds that it has subject matter jurisdiction, it should stay the case or transfer this case to the District of New Jersey, where (1) Breckenridge and Everett are engaging in patent litigation over another product, Vitafol® -OB; (2) Everett has since filed a patent infringement action against Breckenridge over the product at issue here, Nutravance; and (3) Everett is located.

Breckenridge responds that the allegations in the Complaint, "under all the circumstances," show a substantial controversy of more than sufficient immediacy for a finding of subject matter jurisdiction.  Breckenridge also argues that its allegations of patent invalidity are sufficient to meet the notice pleading requirements of Fed. R. Civ. P. 8(a).  Finally, Breckenridge argues that Everett has not shown "compelling circumstances" to warrant a transfer away from Breckenridge's choice of forum in this action, the first-filed action concerning the Nutravance product.

**Standard of Review**

Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." Defendant asserts that "Breckenridge's allegations do not establish the existence of a case of actual controversy" and therefore the Court lacks subject matter jurisdiction.  The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction properly exists in the federal court. See Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1383 (Fed. Cir. 2002).  The Court resolves the issue of whether an actual controversy exists under the Declaratory Judgment Act in a patent case as a

3

question of law. <u>Brown v. Toscano</u>, 254 F.R.D. 690 (S.D. Fla. 2008) (<u>citing</u> <u>Black & Decker, Inc.</u>

<u>v. Robert Bosch Tool Corp.</u>, 371 F.Supp.2d 965, 968 (N.D. Ill. 2005)

**<u>Analysis</u>**

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  The phrase "case of actual controversy" in the Declaratory Judgment Act

"refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."

<u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007); <u>see also</u> <u>Prasco, LLC v. Medicis</u>

<u>Phar. Corp.</u>, 537 F.3d 1329, 1335 (Fed. Cir. 2008) ("The Declaratory Judgment Act's

requirement of 'a case of actual controversy' simply affirms this Constitutional requirement,

having long been interpreted as referring to any case and controversy that is justiciable under

Article III.").

Article III of the United States Constitution restricts federal judicial power to the

adjudication of cases or controversies. U.S. Const. art. III, § 2.  Hence, as long as a claim "meets

the case or controversy requirement of Article III, a district court may have jurisdiction over a

declaratory judgment action." <u>MedImmune</u>, 549 U.S. at 127.  In <u>MedImmune</u>, the Supreme Court

reaffirmed the basic principle for determining whether a declaratory judgment claim satisfies the

"case of actual controversy" requirement.  Courts must determine "'whether the facts alleged,

<u>under all the circumstances</u>, show that there is a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.'" 549 U.S. at 127 (<u>quoting</u> <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>,

4

312 U.S. 270, 273, (1941)) (emphasis added).  The <u>MedImmune</u> Court emphasized that the dispute must be " 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " <u>Id.</u> at 127 (<u>quoting</u> <u>Aetna Life Ins. Co., v. Haworth</u>, 300 U.S. 227, 240-41 (1937)).

The above-described test set forth in <u>MedImmune</u> presents a divergence from the previously established "apprehension of suit" test.  As the Federal Circuit explained in <u>Benitec Australia, Ltd. v. Nucleonics, Inc.</u>:

> Prior to <u>MedImmune</u>, our case law required that there be "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." <u>See, e.g.</u>, <u>BP Chems. Ltd. v. Union Carbide Corp.</u>, 4 F.3d 975, 978 (Fed. Cir. 1993). However, "[t]he Supreme Court's opinion in <u>MedImmune</u> represents a rejection of our reasonable apprehension of suit test." <u>SanDisk</u>, 480 F.3d at 1380[1]; <u>see also</u> <u>Teva</u>, 482 F.3d at 1339[2].

495 F.3d 1340, 1343-44 (Fed. Cir. 2007).  Indeed, courts have recognized that "the now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." <u>Micron Technology, Inc. v. Mosaid Technologies, Inc.</u>, 518 F.3d 897 (Fed. Cir. 2008).

The Court must determine the presence or absence of jurisdiction on the facts existing at the time the complaint under consideration was filed. <u>GAF Building Materials Corp. v. Elk Corp.</u>

---

[1] <u>SanDisk v. STMicroelectronics, Inc.</u> 480 F.3d 1372 (Fed. Cir. 2007).

[2] <u>Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.</u>, 482 F.3d 1330, (Fed. Cir. 2007).

of Dallas, 90 F.3d 479, 483 (Fed. Cir. 1996) (citing Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734 n. 2 (Fed.Cir.1988).

Here, as Everett emphasizes in its motion, the Complaint does not allege any affirmative acts by Everett with respect to the assertion of the subject patents against Breckenridge's Nutravance product.  Nor does the Complaint even allege that Everett was aware of Nutravance; to wit, Breckenridge alleges that it began to market and sell Nutravance on January 7, 2009, the same day the Complaint was filed. (Compl. ¶ 11).  Rather, in an attempt to demonstrate that there existed a "case of actual controversy" at the time of filing the Complaint, Breckenridge alleges that Everett's prior lawsuits against Breckenridge and other competitors concerning its multivitamin products show that an actual and substantial controversy exists between the parties. (Compl. ¶ 23-25).

The Complaint alleges that Everett has a prior pattern of conduct of initiating litigation against potential infringers of its patents and copyrights.  (Compl. ¶ 23-25).  Specifically, the Complaint lists the five previous lawsuits filed by Everett (two in 2004, one in 2005, and two in 2008). (Compl. ¶ 23-24).  Three of these lawsuits were assertions of patent rights and two were assertions of trademark and other rights.  Only one of these lawsuits was against Breckenridge. (Compl. ¶ 24).  None of these lawsuits were over the products or patents at issue in this case. (Compl. ¶ 23-24).

"Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." Prasco, 537 F.3d at 1335.  However, much like the litigation in Prasco, none of the prior suits alleged in the Complaint involve the patents relevant to this case, and only one prior suit involves Breckenridge.  A "prior suit premised on other patents cannot alone create a real and immediate controversy, and it is entitled

6

to only minimal weight in analyzing whether such a controversy has been created." <u>Prasco</u>, 537

F.3d at 1341.  <u>See also</u> <u>Panavise Products, Inc. v. National Products, Inc.</u>, 2009 WL 73137 (Fed.

Cir. 2009) (finding no subject matter jurisdiction where patent holder had no knowledge of

product at issue, even where patent holder previously sued six different entities for infringement

of patent-in-suit over a two-year period).  Here, the patents-in-suit were issued in 2003 and 2005,

yet Breckenridge does not allege that Everett has ever filed suit against any competitors, let alone

Breckenridge, to enforce these patents. (Compl. ¶ 14, 18).  As such, this case is readily

distinguishable from <u>Third Wave Technologies, Inc. v. Digene Corp.</u>, 2006 WL 83340 (W.D.

Wis. 2006) and <u>Micron Technology</u>, 518 F.3d at 901, upon which Breckenridge relies to support

its position that there was sufficient prior related litigation in the instant case to establish subject

matter jurisdiction.  In <u>Third Wave</u>, the court found subject matter jurisdiction where the patent

holder had sued two other competitors for infringement of <u>the same patent </u>as a patent-in-suit in

the declaratory action.  In  <u>Micron Technology</u>, the declaratory action plaintiff had already

witnessed the patent-holder suing "each of the other leading manufacturers" of the relevant

technology.   In contrast, the facts alleged in the present Complaint regarding prior related

litigation do not rise to the level of establishing an actual controversy as to the patents-in-suit.

Additionally, the Complaint does not allege any other forms of prior conduct on Everett's

part that would demonstrate its intent to vigorously enforce its patent rights.  In contrast, in

<u>MedImmune</u>, the patent holder had delivered the declaratory judgment plaintiff a letter

threatening to enforce the patent at issue. 549 U.S. at 121-122.  Likewise, in <u>Vanguard Research,</u>

<u>Inc. v. PEAT, Inc.</u>, 304 F.3d 1249 (Fed. Cir. 2002), the court held that subject matter jurisdiction

existed where the patent holder (1) sought to enjoin the declaratory judgment plaintiff from

production of the product on other grounds; (2) wrote the plaintiff a letter indicating it did not

7

have the right to use the technology; and (3) repeatedly contacted that plaintiff's customers to tell them that the plaintiff was using the technology without permission.  Similarly, in Neuralstem, Inc. v. StemCells, Inc., 573 F.Supp.2d 888, 890 (D. Md. 2008), the court found an actual controversy or dispute based on "Defendants' April 23 press release, in which StemCells vaunted its confidence that 'any' third party wishing to use neural stem cells as 'potential therapeutics' or as 'drug screening' tools 'will have to seek a license from [StemCells],' Defendants' policy of enforcing their patents through litigation, and the history between the parties with respect to the technology involved here, including other statements and correspondences."  See also Astec America, Inc. v. Power-One, Inc., 2008 WL 1734833, *6- (E.D. Tex. 2008) (denying motion to dismiss declaratory judgment for lack of subject matter jurisdiction where the history of litigation between the parties and the existence of a discovery dispute in one of the litigations as to the products at issue in the declaratory judgment claims showed a case or controversy existed); In re Dr. Reddy's Laboratories, Ltd., 2002 WL 31059289, * 3-4 (S.D.N.Y. 2002) (finding subject matter jurisdiction where patent-holder's chairman and CEO made statements in two Wall Street Journal articles that it would be difficult to make a generic version of patented product without violating the patents and that if the generic companies refuse to pay to license the patent-holder's active ingredient, there is the "'threat of a lawsuit'" against the generic companies.); Goodyear Tire & Rubber Company v. Releasomers, 824 F.2d 953, 956 (Fed. Cir. 1987) (finding subject matter jurisdiction where "these parties are themselves currently embroiled in a protracted dispute in state court over the commercial technology generally covered by the [patents at issue]").  In contrast, the Complaint here is devoid of allegations of prior conduct on Everett's part that would demonstrate its intent to vigorously enforce its patent rights.

The only other basis upon which the Complaint relies for jurisdiction is product marking.

The Complaint alleges that the container and product insert for Everett's Strovite ® Advance are marked with the '293 and '904 patents. (Complaint ¶ 16, 20).  However, Everett's decision to mark its products with the applicable patents carries minimal weight, particularly in this case where Everett is not even alleged to have known about Nutravance.  As the Federal Circuit explained under similar circumstances in Prasco:

> Medics' decision to mark its products with the applicable patents provides little, if any, evidence that it will ever enforce its patents. And in particular, Medicis' decision to mark its products, prior to any knowledge of Prasco's OSCION ™ product, is irrelevant to the question of whether Medicis' believes OSCION ™ infringes the applicable patents or will attempt to interfere with Prasco's business on the basis of an allegation of infringement. Thus, Medicis' marking of its competing products pursuant to § 287(a) is not a circumstance which supports finding an imminent threat of harm sufficient to create an actual controversy.

537 F. 3d at 1340-41.

The Court next addresses Breckenridge's reliance on that the fact that Everett filed an infringement suit against Breckenridge over the patents-in-suit only a week after Breckenridge filed this action.  While "the burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory judgment was filed and that it has continued since, . . . . [i]f a party has actually [been] charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction at that time." Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007) (emphasis added) (internal citations omitted). See also Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993).  In this case, as set forth above, Breckenridge had not yet been charged with infringement of the patent at the time it filed the instant declaratory action.

While courts have not held that a subsequent suit filed soon after by the patent holder against the declaratory judgment plaintiff was dispositive for purposes of determining the "case

of actual controversy" requirement, they have held that it supports the conclusion that a

"substantial dispute" existed at the time the declaratory suit was filed:

> Although not dispositive for the purposes of establishing a "case or controversy"
> in the pending action, the fact that Defendant did sue Plaintiffs for alleged
> infringement of the patents-in-suit reflects the reasonableness of Plaintiffs' belief
> that Defendant intended to initiate legal proceedings against them.  See BP
> Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 980 (Fed . Cir. 1993)
> ("Although it is the situation at the time the suit was filed that establishes the
> existence vel non of an actual controversy, subsequent events can reinforce the
> correctness of the conclusion.").

Cingular Wireless LLC, v. Freedom Wireless, Inc., 2007 WL 1876377, *3 n.1 (D. Ariz. 2007).

For example, in Micron Technology, the Federal Circuit, in analyzing the question of subject

matter jurisdiction, looked at "[t]he record evidence at the time of the filing in the California

district court."  518 F.3d at 901.  However, it noted that the patent holder's suit was filed only a

day later, seemingly recognizing this fact as support for the conclusion that there was a "real and

substantial dispute between these parties" at the time the case was filed. Id.  See also Neuralstem,

573 F.Supp.2d at 895 ("Even more telling is the fact that Defendants filed their infringement

action in California just hours after Neuralstem filed the instant declaratory judgment action.")

Nonetheless, as Breckenridge concedes, subject matter jurisdiction must have "existed at

the time the claim for declaratory judgment was filed." Benitec, 495 F.3d at 1344. (Opp. Br. 10).

"[L]ater events may not create jurisdiction where none existed at the time of filing.  Rather, [t]he

presence or absence of jurisdiction must be determined on the facts existing at the time the

complaint under consideration was filed." GAF Building Materials, 90 F.3d at 483 (citations and

internal quotations omitted).  At the time Breckenridge initiated this lawsuit, it did not have an

objectively reasonable basis to believe that Everett would sue it for infringement.  The fact that

Breckenridge chose to throw down the gauntlet without a valid basis should not inure to its

benefit because Everett has since countered with a lawsuit of its own.  To hold otherwise would impose a chilling effect on the right of a patent holder, who is prematurely sued in a declaratory judgment action, to initiate what it believes is a legitimate infringement action for fear that its suit will be used against it in a forum selection battle.  Therefore, while the Court may use a subsequently filed suit to support its conclusion that a "substantial dispute" existed at the time the declaratory suit was filed, if the Court concludes, as it does here, that there was no "substantial dispute" at the time of filing, a subsequently filed suit should not affect the outcome.

**Conclusion**

Considering the totality of the circumstances, Breckenridge has failed to establish a "case of actual controversy" under the Declaratory Judgment Act at the time the present action was filed.  Therefore, the Court lacks subject matter jurisdiction over this action.  Accordingly, the Court will not consider the additional issues raised by the parties in the motion to dismiss under Rule 8(a), or the motion to stay or transfer the action.  For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  Defendant Everett Laboratories ("Everett")'s Motion to Dismiss, Stay, or Transfer (DE 4/7) is **GRANTED.**  The above-style action is hereby **DISMISSED** for lack of subject matter jurisdiction.

2.  Defendant's Motion for Oral Argument on Motion to Dismiss, Stay, or Transfer and

for Expedited Treatment of the Motion (DE 15) is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 11th day of March, 2009.

KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record